UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| RAYMOND KENTON GOUGER, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 1:09-CV-22 |
| ) | |
| DEPUTY JERRY VANALLMAN, ) | Chief Judge Curtis L. Collier |
| in his official capacity as a deputy sheriff ) | |
| of Marion County, Tennessee, and in his ) | |
| individual capacity, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

Before the Court is Defendant Deputy Jerry VanAllman's ("Defendant") motion for summary judgment (Court File No. 19). Plaintiff Raymond Kenton Gouger ("Plaintiff") filed a response (Court File No. 32), to which Defendant replied (Court File No. 33). For the following reasons, the Court will **GRANT** Defendant's motion and enter summary judgment in favor of Defendant.

**I.    RELEVANT FACTS**

The following facts are those in the light most favorable to Plaintiff. On January 30, 2008, while driving though Marion County, Tennessee, Plaintiff encountered Defendant traveling in the opposite direction (Court File No. 19-1, "Gouger Depo." at 37:23-39:8). After approximately four minutes, Plaintiff states Defendant had turned around in the patrol car, caught up with him, and pulled him over (*id.*)

According to Defendant, while passing Plaintiff's vehicle and a second vehicle immediately following Plaintiff, Defendant noticed a partially empty beer can hit the road directly in front of his

patrol car (Court File No. 19-2, "VanAllman Depo." at 102:1-9). Defendant was unsure whether the beer can came from Plaintiff's vehicle, because Plaintiff was immediately followed by an unidentified third driver (*id.*). Defendant turned around and caught up with the two vehicles (*id.* at 102:14-19). Defendant states he observed the vehicle behind Plaintiff's to be traveling in a normal manner, without any weaving or other exaggerated driving (*id.* at 108:16-22), while he observed Plaintiff's vehicle to be traveling away at a high rate of speed (*id.* at 108:20-109:2).

Defendant decided to pass the vehicle behind Plaintiff and observe Plaintiff's vehicle (*id.*). After catching up to Plaintiff's vehicle, Defendant reports he observed Plaintiff swerve off the roadway and onto the gravel shoulder (*id. at* 111:20-112:1). Defendant also observed Plaintiff's license tag was expired (*id.* at 112:3-6). Defendant decided to stop the vehicle on suspicion of DUI and driving with expired tags (*id.* at 112:10-13).

After stopping the vehicle, Defendant approached Plaintiff's vehicle and accused Plaintiff of throwing the beer can onto the highway and of having an expired license tag (Gouger Depo. at 42:13-19). Defendant approached Plaintiff's vehicle and requested his driver's license (*id.* at 43:4-44:1). At that point, Defendant told Plaintiff he could smell alcohol and asked him if he had been drinking (*id.* at 43:9-16). Plaintiff responded he had consumed only one beer more than five hours earlier (*id.* at 43:14-16). Defendant then asked Plaintiff why his eyes were so red, and Plaintiff answered they were red because he was very tired (*id.* at 44:7-15). Plaintiff told Defendant, "My eyes stay red seven days a week in my work." (*Id.* at 44:20-12).

Plaintiff then exited his vehicle and walked to the rear of his vehicle to look at his license tag. Plaintiff was surprised to see that his license tag was indeed expired (*id.* at 45:8-10). After looking at the tag and while still standing outside of his vehicle, Plaintiff was asked to perform a

2

field sobriety test (*id.* at 46:12-16). Because Plaintiff had been stopped on the side of a mountain, the road was at a steep incline and both Plaintiff and Defendant agreed it would be unfair to have Plaintiff perform a sobriety test which required him to walk in a straight line or other similar tests (*id.* at 46:20-47:24).

Plaintiff was asked to perform sobriety tests which included 1) counting backwards on his fingers and 2) following a pen with his eyes while Defendant moved it horizontally in front of Plaintiff's face (*id.* at 48:5-50:16). Plaintiff states he was unable to perform the finger counting test, because he did not understand the instructions (*id.*). Defendant explained the instructions to Plaintiff at least twice (*id.*). As for the vision test, Defendant elaborates in his memorandum that the vision test is called a "Horizontal Gaze Nystagmus" exam (Court File No. 20, at 3). At the time of the incident, Defendant reported that Plaintiff was unable to smoothly follow the pen with his eyes and moved his head when following the pen (Court File No. 19-4, at 1).

Defendant then informed Plaintiff he had not performed the field sobriety tests adequately and placed him under arrest (Gouger Depo. at 43:6-13). Plaintiff was placed into Defendant's patrol car, and Defendant asked Plaintiff for permission to search Plaintiff's vehicle (*id.* at 55:4-12). Plaintiff granted Defendant permission to search the vehicle (*id.*). During the search, Defendant found a prescription bottle of hydrocodone pills (*id.* at 55:19). According to Plaintiff, the prescription "had to be a year or two old" (*id.* at 56:6).

Plaintiff was taken to the Marion County jail, where Defendant administered a breathalyser exam (*id.* at 73:10-15). The exam revealed no trace of alcohol (*id.*). After this result, Defendant told Plaintiff he was going to perform a blood analysis to test for the presence of substances in Plaintiff's system other than alcohol (*id.* at 74:2-6). Plaintiff stated it was possible he would test positive for

3

hydrocodone, because he had taken a half of a tablet two days prior to the incident (*id.* at 75:4-10). The blood test was not performed. Rather, Plaintiff was charged with public intoxication. Defendant decided to charge Plaintiff with public intoxication in lieu of a DUI (*id.* at 75:17-23), because the public intoxication charge would not require a blood test (VanAllman Depo. at 80:22-25; 81:1-3; 96:15-25). Plaintiff was then released, and the charges were later dismissed.

On January 29, 2009, Plaintiff filed this action against Defendant in his individual and official capacities. Plaintiff states two federal claims under 42 U.S.C. § 1983, alleging false arrest under the Fourth Amendment and a deprivation of due process under the Fourteenth Amendment (Compl. ¶ 26). Plaintiff also states state law claims of negligence, battery, assault, intentional infliction of emotional distress, negligent retention, abuse of process, and malicious prosecution (Compl. ¶ 29). Defendant then filed this motion for summary judgment which is now ripe for review.

**II.   STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party must demonstrate no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). That is, the moving party must provide the grounds upon which it seeks summary judgment, but does not need to provide affidavits or other materials to negate the non-moving party's claims. *Celotex*, 477 U.S. at 323. The Court views the evidence, including all reasonable inferences, in the light most favorable to the

non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims. *Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. In short, if the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court may enter summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.   DISCUSSION

Defendant argues he is entitled to summary judgment on each of Plaintiff's claims. Specifically, Defendant argues 1) he is entitled to qualified immunity because no constitutional violation occurred, 2) the municipality is entitled to summary judgment because no constitutional violation occurred, and 3) both Defendant and the municipality is immune from Plaintiff's claims under state law pursuant to the Tennessee Government Tort Liability Act. Each of these points is addressed in turn.

### A.   Qualified Immunity

Plaintiff alleges two constitutional violations: false arrest under the Fourth Amendment and a deprivation of due process under the Fourteenth Amendment. Defendant asserts qualified immunity on both constitutional claims, arguing no constitutional violations occurred in this case.

5

Government officials performing discretionary functions may invoke qualified immunity as an affirmative defense "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). There are two parts to the qualified immunity analysis: (1) whether, viewing the facts in the light most favorable to the plaintiff, there was a violation of the plaintiff's constitutional right(s), and (2) whether the right was clearly established to a reasonable person, such that its violation would be objectively unreasonable. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). The district court may begin its analysis with either of the two parts. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). If either of the prongs is answered in the negative, the individual officer is entitled to qualified immunity. *See Saucier*, 533 U.S. at 201.

Because the Court agrees no constitutional violation occurred in this case, it is only necessary to consider the first prong. Under either of Plaintiff's federal claims, Defendant is entitled to qualified immunity. Each of Plaintiff's two theories of constitutional violations are treated separately.

### 1. Arrest Without Probable Cause

Plaintiff alleges his right under the Fourth Amendment to be free from unreasonable seizure was violated when he was arrested without probable cause. Defendant asserts no constitutional violation occurred, because Defendant had probable cause to arrest Plaintiff.

The Fourth Amendment protects against unreasonable seizures. Here, the parties agree Plaintiff was seized. Therefore, the dispute turns on whether the seizure was reasonable. To succeed on a false arrest claim under § 1983, Plaintiff must prove the arresting officer lacked

6

probable cause to arrest him. *Voyticky v. Timberlake,* 412 F.3d 669, 677 (6th Cir. 2005); *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002). Probable cause denotes "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). Whether probable cause exists is determined under a reasonableness standard based on all the facts and circumstances within the officer's knowledge at the time of the arrest or seizure. *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003).

In assessing the circumstances necessary to support probable cause to arrest an individual for public intoxication, the Sixth Circuit has stated that the "inquiry is not to determine the veracity of the charge, i.e., was [the plaintiff] *actually* intoxicated, but rather whether [the officer] had probable cause *to believe* that [the plaintiff] was intoxicated." *Cain v. Irvin*, 286 F. App'x 920, 925 (6th Cir. 2008) (emphasis in original).

Here, Plaintiff does not dispute any of the facts upon which Defendant asserts he based his belief Plaintiff was intoxicated. For example, Plaintiff admits his eyes appeared red during the traffic stop (Gouger Depo. at 44:7-20), he had some difficulty in following Defendant's instructions during the field sobriety test, including being unable to count backwards on his fingers (*id.* at 48:5-50:16), and that Defendant alleged at the scene Plaintiff had unsuccessfully completed the Horizontal Gaze Nystagmus test. In addition to these admissions, Defendant asserts his belief that Plaintiff was intoxicated was also based upon the smell of alcohol and the beer can Defendant had seen on the highway (Court File No. 20, at 9-10).

7

Plaintiff's only argument against the reasonableness of Defendant's belief was the subsequent breathalyser test revealed he did not have any alcohol in his system. That Plaintiff subsequently passed a breathalyser exam, however, does not negate Defendant's probable cause to arrest Plaintiff. Probable cause is assessed at the time the arrest is made, not in light of facts obtained later. *Thacker*, 328 F.3d at 255; *Cain*, 286 F. App'x at 925. Therefore, as a matter of law, the subsequent test result is irrelevant to the issue of probable cause.

Because Plaintiff does not mount any other challenge to the reasonableness of Defendant's conclusion, Defendant is entitled to summary judgment on the issue of probable cause and Plaintiff's § 1983 claim under the Fourth Amendment.

### 2. Violation of Due Process

Plaintiff also alleged a violation of his Fourteenth Amendment right to due process. Plaintiff does not state in the complaint, however, how his right to due process was violated, other than to allege the same facts that support his claim that he was arrested without probable cause (*see* Compl. ¶ 26). Moreover, in responding to summary judgment, Plaintiff entirely fails to address his claim his due process right was violated. Because Plaintiff has not elaborated on this claim, the Court is without any guidance as to which of the multiple theories of a due process violation Plaintiff alleges he suffered.

Even a charitable reading of the complaint suggests that Plaintiff merely intends to recast his claim for arrest without probable cause as a due process violation. If this is the case, then Defendant is entitled to summary judgment. "'[T]he Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made, while due process regulates the period of confinement after the initial determination

of probable cause.'" *Drogosch v. Metcalf*, 557 F.3d 372, 378 (6th Cir. 2009) (quoting *Villanova v. Abrams*, 972 F.2d 792, 797 (7th Cir. 1992)). Because Plaintiff was released before a probable cause determination was made, Plaintiff's reliance on the Fourteenth Amendment to address Defendant's prearrest conduct is misplaced.

If the Court has misconstrued Plaintiff's due process claim, the fault can only be placed upon Plaintiff himself for neglecting to brief the issue. To that end, in the alternative, Defendant is entitled to summary judgment on the Fourteenth Amendment claim because Plaintiff waived the issue by failing to address it on summary judgment. *See* E.D. Tenn. L.R. 7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought."); *see also McLean*, 224 F.3d at 800 ("To prevail, the nonmovant must show sufficient evidence to create a genuine issue of material fact.").

### B. Municipal Liability

Because the Court concludes Plaintiff did not suffer a constitutional injury at the hands of Defendant acting in his individual capacity, Defendant is likewise entitled to summary judgment in his official capacity as a deputy sheriff of Marion County, Tennessee. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized [a constitutional violation] is quite beside the point.").

### C. State Law Claims

Defendant argues he is entitled to summary judgment on Plaintiff's state law claims, both because he fails to state a claim and because Defendant is immune pursuant to the Tennessee

9

Government Tort Liability Act ("TGTLA"). Defendant merely raises this argument in a cursory manner, however, and does not explain either the requirements for stating each of Plaintiff's various state law claims or how the TGTLA applies to them. Given this lack of guidance, the Court is not inclined to rule on the issue at this time.

Because the Court has concluded all of Plaintiff's federal claims will be dismissed on summary judgment, however, the Court will decline to exercise supplemental jurisdiction over Plaintiff's related state law claims. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

## IV. CONCLUSION

For the reasons stated above, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 19) and this case will be **DISMISSED**. The federal claims are dismissed with prejudice while the state law claims are dismissed without prejudice.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**